case number 22-5234. Jaskirat Singh et al. at balance, Sudhir Singh Tor v. David H. Berger in his official capacity as the Commandant of the Marine Corps et al. Mr. Baxter for the at-balance, Mr. Springer for the at-balance. Good afternoon. Good afternoon, Your Honors. Eric Baxter here on behalf of Appellants Jaskirat Singh, Akesh Singh, and Malav Singh Chahal, two of whom are with us in the courtroom today. May it please the court. The Marine Corps has made exceptions for literally thousands of recruits specifically to increase diversity. But unlike the Army, Air Force, and Navy, the Marine Corps refuses to give accommodations, same accommodations, to these three sick recruits. The government claims this is essential to national security, but national security cannot possibly care whether an accommodation is granted for medical, cultural, or religious reasons. The government wants this court to rubber stamp this discrimination, saying the military gets special deference, but Congress has at least twice spoken specifically to this issue, directing the military to generously accommodate a religious wear of recruits. And the Marine Corps' own regulations demand the same. Moreover, deference cannot mean unquestioning acceptance. The government has not even tried to explain how its accommodations for medical beards, for women's hairstyles, for tattoos, for its officers who are trained at West Point, where religious accommodations are allowed, how all of these can be safe while religious accommodations introduce a national security risk. Failure to reason deserves no deference, and it cannot survive strict scrutiny. Mr. Baxter, can you talk a little bit about irreparable harm in this context? The Marines have said that they will waive or postpone any deadline for joining basic training. So if that's the case, what's the irreparable harm? There are two sources of irreparable harm, Your Honor. First, as a matter of law, the pressure on our clients to sacrifice their religious beliefs in order to serve their country is irreparable harm, and that is ongoing every day. The government has delayed decisions and now litigated for over two years. That is irreparable harm. There's also irreparable harm to their ability to progress in the military. They've lost opportunities to begin their training, to receive promotions, and this will impact their ability to retire. All of these things contribute to the irreparable harm. In this court, on multiple occasions, in Camerlyn... I mean, I think that certainly goes to harm, right? And even if there is a likelihood of success on the merits, what's the irreparable harm from waiting three months or six months? I mean, what's the harm from delaying entering the Marines? In the Supreme Court, in the Roman Diocese of Brooklyn case, this court also, in the Chaplaincy of Full Gospel Churches v. England case, has said that the constitutional injury is itself irreparable. Every day that our clients are being discriminated against is a harm that can never be remedied. And so we would ask the court, as a matter of law, and in addition, the harms to their careers, their ability to progress, is irreparable. It's not a financial harm that can just be remedied. They've lost opportunities to advance. They've lost opportunities to retire at an age when they otherwise would have been able to. All of those things can never be remedied, and each day that passes is further harm. I guess if that... I mean, I understand what you're saying, but you haven't been proceeding with unusual haste in district court. You didn't ask for expedited treatment of the PI decision. You've requested discovery on this very question of the recruit training that you expect to end by the end of December, and then you want motions to be filed after that. So it doesn't seem like you're proceeding with a haste that's consonant with the injury that your clients are suffering every day. Usually when people are in the position of making that argument, they have... I didn't see in your complaint a request for expedited proceedings in district court. It wasn't the fastest... I've seen much faster preliminary injunction motions in that district court. And the discovery doesn't seem to be going with any great speed. In fact, if they were to get the PI from us, they would probably finish the recruit training before you finish discovery. That seems to get to the question about irreparable harm. How are we supposed to grapple with that? Your Honor, a couple of responses. First, the vast majority of the delay in this case is the military's delay. Military has held our clients' accommodation requests for month after month. Once we filed the complaint, we immediately filed a motion for preliminary injunction, which is a request for expedited relief. The court ruled as quickly... gave us an early hearing date. How long did briefing take on the PI? The hearing was... the PI was filed in April, as I recall. The hearing was held in June, and the judge ruled in August. We filed as quickly as we could, and we had to file a motion for injunction. Did you ask for the preliminary injunction motion to go faster? Did you propose a faster schedule? We did not, Your Honor. We were aware that the preliminary injunction itself was expedited. I understand, but we see a lot of cases, and some of them go so much faster than this. And I'm just really troubled by... you proposed this discovery schedule. This is what you proposed that the district court adopted, and that is, like I said, you would finish by December 3rd and then a briefing schedule by January 6th. So as best I can tell, I don't know when you think this is going to end up, but it's going to... if you finish discovery then and then have briefing, I'm guessing, on summary judgment, or maybe there will be some bites about discovery, that's going to take a while. You're not going to be done with the process, like I said, until long after. If you got your PI, they'd be done with. All right, we asked for discovery as quickly as we could and expedited it as was reasonable under the circumstances. And even at that fast pace, by the time the judge rules on a motion for summary judgment, our clients will have waited almost another year from the filing of their preliminary injunction for the relief that they seek. One of our clients, plaintiff Chahal, has indicated that he cannot wait past the end of the year. You've said that in your briefs, but I haven't seen any declaration. Can you elaborate on that argument, please? Yes. All of our clients have taken menial jobs or trying to fill their space while they're looking for this career opportunity to open up. Plaintiff Chahal has indicated that he cannot afford personally to continue without pursuing a career, and he will have to seek other opportunities if he cannot... Did you tell the district court that? This came up after the preliminary injunction hearing, but we did tell the district, Judge Leon, that our clients were all anxious and ready to start. You proposed a discovery schedule that doesn't take care of your client. Well, the discovery schedule could involve expert witnesses. There's extensive document discovery. The military has indicated that it cannot produce documents any faster than 90 days, and so that is what Judge Leon ordered. And so we have moved this case as fast as... I understand, but it's not going to take care, then, of Mr. Chahal. Did I say it right, Chahal? Chahal. Chahal, excuse me. That would not take care of Plaintiff Chahal. So then what you want is a preliminary injunction that would allow him to... Commence training while that discovery is ongoing. When would he have to commence training? Right. When would he have to commence training? Well, there are new classes commencing every month, so he would commence as soon as the next class is available to him. So if he knows... I don't know how the Marines operate, but there's usually a gap between at least when people sign up and when they start boot camp. I don't know what happens with delayed entry. Is the theory that if the PI is granted, you would start the next month? Is that normal? Our clients are already... Is that how the Marines operate? That's my understanding, that there is a class starting every month, and our clients would be able to start as soon as the next... So slots wouldn't already be filled by the time of a preliminary injunction? I don't know the answer to that, Your Honor. Okay. I'm just trying to figure out how this would work. Our clients are fully qualified. They're ready to be in service immediately upon an opportunity opening up, and knowing that that opportunity opens up would allow them to make the necessary accommodations to make that work. But our clients for now, almost two years, have been waiting for this opportunity. Mr. Baxter, if we were to grant an injunction pending appeal and the plaintiffs were able to start basic training, by the time the case... I mean, wouldn't the merits of the case then become moot because the Marines are able to grant... will grant religious exemptions after basic training? So 13 weeks, I believe, is basic training, right? So why wouldn't their merits claims become moot if we were to grant them preliminary relief? This motion decision could resolve the merits of the case. We've alternatively asked for those to be immersed and expedited, but the evidence is the exact same. The record is... Wait, wait, wait. Can I get a clarification from you? You asked for the merits. Now, the only merits we would have before us is the preliminary injunction appeal, and I think, if I'm wrong, Judge Rao is asking about the merits of the case. The merits of your claim... It would... I apologize, Your Honor. Pending before the district court. It would resolve this particular issue about the recruit training for these plaintiffs. It would not resolve all the issues in the case or additional issues, restrictions that the Marine Corps places on... What claims would these three continue to have? Because, at this point, part of basic training is you identify your skills and which avenues you're going to... Or the Marines decide for you which avenues you're going to take then in further training and which positions you're going to take. So it wouldn't even be entirely speculative whether the issue at any time in the foreseeable future is going to include things like deployment to areas where imminent danger combat situations exist or wanting to pursue other particular ceremonial duties or something where there would be an issue. You just don't even know that that's going to happen until after basic training, if even at that point. We do know that the Marine Corps has already stated that our clients cannot serve with their religious accommodations while in a combat zone, which is quite broadly defined, and so we've already challenged that. I understand, but that may be, Mr. Attor, that may be a relevant consideration at this point. But for folks that haven't even gone through basic training, don't know if they're going to make it through basic training, don't know where they're going to be sent after basic training, they may be sent off... They may have expertise in particular areas where they're going to be sent off for further education and they wouldn't even be eligible for deployment to a combat zone for years. Those things wouldn't even be ripe at this point. We would, I don't... How do you know there's any ripe, how do you know at this point they've got any ripe claim? Marines have stated that they are an expeditionary force, that they, that's the job of Marines, is to be sent out on expeditionary assignments. The government has not challenged that claim. Do 100% of Marines go out on expeditionary assignments to combat zones within the first year after basic training? No. There's no question, Your Honor, that the military has already denied, they have written in a letter denying our clients relief on that issue. That issue is ripe. We have challenged it in our complaint. It's before the court. They've said as to these three who haven't even yet allowed to join the Marines for boot camp, they are not eligible for... That's correct. ...assignment two. That's in the written denial of... I mean, they may have that policy, but it wouldn't seem like you'd have remotely a ripe challenge at this point. It could well materialize later, but it wouldn't be ripe. There's no requirement that we have to wait until the moment of the deployment. Not the moment of the deployment until it's reasonably foreseeable that there's going to be a deployment. The Marine Corps has not made that claim, but I would just point out, Your Honor, that this accommodation and the completion of the recruit training before further proceedings can be held as no different than the BEARD accommodations, which the Marine Corps has agreed can be granted on day one. They usually last 10 to 12 weeks at minimum, and so those accommodations also will not expire before then. I'm just trying to get back to the question where Judge Rouse started. I'm sorry. I'll be quiet for a moment. The PI in this case, as to these three, and you're not including Mr. Torf, if I'm saying that correctly, in the PI motion, the only right claim they have is going to be conclusively resolved on the merits if you get the preliminary injunction. I would just disagree with Your Honor on the issue of ripeness, that no one's challenged the ripeness. Well, I can raise the question. I'm raising the question because it goes to what legal test we apply to your request for a preliminary injunction, and if it is resolving on the merits, the claim that they have right now and other claims are dependent on contingent future events, what is the legal test for a preliminary injunction that resolves a claim on the merits? Is it just the ordinary PI test? It would resolve the claim only on the merits of this piece of their case, and the standard is the same as it is on a normal preliminary injunction. Have we held it as the same? I'm not aware of any decision where the court has addressed that question, but the court has often expedited and merged on the merits in similar situations. Normally what would happen actually is in district court, when something's like this, in district court someone says we'd like to combine the preliminary injunction motion and summary judgment, and things go extremely fast, and then you can combine the merits and the preliminary injunction decision, but that didn't happen here, and so we can't decide the merits. We don't have any jurisdiction to decide the underlying merits in this case. The only merits we have is the merits of the preliminary injunction decision. We have no jurisdiction over the substantive merits, and yet so we can't make the combination that you're proposing, and yet as Judge Rao said, that's what the preliminary injunction would do here. Your Honor, if the government, for example, were to introduce additional evidence during discovery and persuade the trial court that that evidence distinguished this court's decision, then that would not resolve the merits. And so there is opportunity for the government, if it thinks that it has a different claim, to bring new evidence that has not brought in so far during the discovery. They can bring that in if it's going to be moot, because that discovery dispute and summary judgment is not going to be resolved. I mean, boot camp's only 13 months, 13 weeks, excuse me. So they can bring anything forward they have, but it's going to be moot. There's no way any new evidence they present is going to be considered and decided before boot camp's over. Right, but there's no harm to the government in doing that. The government has already allowed all kinds of accommodations during training with no known harm or risk to security, and there's no difference between the medical beards that are already being allowed, the women's hairstyles that are already being allowed, the individualized tattoos that are already being allowed, all of which have recently been relaxed for purposes of diversity. Can you maybe speak a little bit to the exemptions here? I mean, of course, in general, courts defer to military judgments, you know, on questions of military readiness or other, you know, questions of unit cohesion. But, I mean, it seems that that, I mean, the interest that the Marines have raised is a compelling one in some abstract sense, right? But the exemptions here, I mean, to what extent do the exemptions undermine any interest that the government has? I mean, how are we supposed to think about, you know, the women's hairstyles or the medical beards in this context? Certainly, Your Honor. First, I would just note that the deference that's owed here is deference to Congress. The Supreme Court and this Court, both in cases involving military decisions, have always said that where Congress has specifically spoken, that the deference is to Congress. And here Congress has twice said that the military should generously accommodate religious guard, both in 10 U.S.C. Section 774, which overturned the Goldman decision, and again in RFRA, where the legislative history shows that Congress specifically was thinking about Sikhs who had served honorably since at least the 40s, discussed their turbans, their beards, and the desire that they should be able to serve without impediment in the armed services. So then looking at how each of the exceptions undermine, the Supreme Court recently has repeatedly said that any exception given for a secular reason that undermines the government's asserted interest triggers strict scrutiny and also defeats strict scrutiny because the government can't show that it has a real interest when it's given so many exceptions. And each of these, you know, there are categorical exceptions here, there are discretionary exceptions, both of which the Court has said, and they directly undermine the interest. The Court, excuse me, the Marine Corps has defined its interest in a variety of ways, but each of them fails. It says very generally it has a compelling interest in national security. The Supreme Court in Hold B. Hobbs and Ramirez involving prison security issues says that that's insufficient. You cannot use this broadly stated interest. The Marine Corps then goes on to say, well, we have an interest in stripping each Marine of their individuality. Just last year in October, the Marine Corps relaxed its tattoo rules specifically to, quote, accommodate the individual desires of Marines and to remove any barriers to their entry. That's at Exhibit B to the complaint. They've also alleged uniformity is a compelling government interest. But with so many exceptions, they don't require everyone to shave. You have a medical exception for beards, that's allowed. That's the exact same exception in part that our clients are asking. Female recruits are not required to shave their head, and it's not just that they're not required to shave, but they can have short, medium, or long hairstyles. They can have braids, ponytails, or twists. Again, these were specifically made to make recruiting more attractive to potential female recruits. The beard accommodations, if you look at Exhibit T to the complaint, the Marine Corps says those are specifically to open, make sure that it was a retention issue specifically for African-American males, 60% of whom suffer from pseudophiliculitis barbae or razor bums. And so these are all accommodations specifically made to accommodate individuals so that the ranks will be more diverse. And yet here the Marine Corps is telling our clients that they are not welcome because they need the same religious accommodations but for a religious reason. And I would also just mention that the Marine Corps takes its officers from West Point, which allows, we already had six graduate from West Point, and those could be assigned to serve and lead. The government cannot allege that there's an interest in the first 13 weeks when it allows these recruits for the rest of their careers, even while they're out on expeditionary forces, special forces on special missions, are allowed to wear beards. All of these examples undermine the government's interest. Now it also says it has an interest in, and actually if you notice in their response brief, they say, well, it's really isn't just about uniformity or looking alike. It's about having all recruits carrying out regulated practices. But their whole experience in boot camp is an experience in following regimented commands. Okay, and I'd just like to jump in for a second. With respect to the appeal, you know, again, being here before a special panel, you were acknowledging in your reply brief that this all your issues are kind of fully captured in the motion. So I guess this kind of piggybacks on Judge Rao. Do you believe that you have a full record here or are you still wanting to be in the district court? Because, again, is this not going to have preclusive effect on what's happening in the district court? We believe that there is more than enough on this record for this court to rule. Of course, if we have the opportunity, we'll ask for more evidence. There's the history of beards in the military, for example. But there is more than sufficient evidence for this court to rule. And the Supreme Court has far less evidence. To rule on the ultimate merits or to rule on the preliminary injunction? To rule on the preliminary injunction, Your Honor. Thank you. Go ahead, Judge Rao. Sorry. Okay. And then with respect. Well, go ahead if you have. I'm going to turn to a different thing. So if you want to follow up on that question. Okay. And then with respect to you mentioned about the Marine Corps receiving other officers, for example, from the Naval Academy. Do they then have to take additional fitness tests to qualify here? No, Your Honor. They're not required to do that. Okay. And then when you were mentioning the accommodations for beards out of medical necessity, that happens after the first day of basic training. But your recruits are actually seeking accommodations before basic training. Right. But the Marine Corps, Your Honor, has the burden to show that there would be some distinction between allowing beards for every day of recruit training minus one and allowing beards for every day of recruit training. And the military hasn't even tried to do that. You don't see a distinction in the government's rationale for beards before training being allowed versus accommodating them after training. The government, Your Honor, has not even provided a rationale. And so if you look at the Supreme Court's decision in Ramirez just a few months ago, the court said that that failure to reason is alone sufficient to fail strict scrutiny. And so we would ask the court to, on the evidence before it, to rule in favor of our clients to allow them to move forward with their careers and their service in the military. If they were going into officer candidate school, I was a little unclear from this record, are people going not to boot camp but to officer candidate school, are they accommodated or are they also required to? To my understanding, Your Honor, that they would be accommodated, but that evidence is not in the record. Okay. All right. And then in your complaint, you ask on page 41 in your prayer for relief for an injunction extending the terms of the delayed entry program and also presumably the expiration dates of the physical tests and things like that. If you got that injunction, maybe you don't need it. Maybe the government's just agreed to do it on its own. The government's agreed to do that on its own. So you don't need that injunction. All right. So that aspect, that concern. That's my understanding. We haven't seen a confirmation from the Marine Corps, but they've indicated that they would do everything they could to extend those deadlines. And so the, well, so far they've extended them as best we can tell. And so the thing that's driving, the one factor that seems to be driving a need for a preliminary injunction as opposed to expedited procedures in the district court is Mr. Fajal's need for a decision, which is nowhere in your complaint. And there's no declaration. This is just in briefing that he needs a complaint before January 1. That's what, that's the timeframe you want this motion decided on? We'd love to have the motion decided as soon as possible because every month is another month of delay and our clients deserve to be able to start their training. But, and the circumstances change on the ground each day. Our clients are working in menial jobs. One's packing luggage at the airport. One is doing trucking dispatch. They're losing opportunities to develop their careers. And so we would ask that as soon as possible they be allowed to commence their training. Even if the government continues to allow this waiver, is there any chance that your clients would no longer qualify, for example, age or any other circumstances that they wouldn't qualify for being able to go in despite these waivers? None that I can imagine. These are all our three young men. They've been working to stay physically fit. So they're ready to start at a moment's notice. I see my time is out. Unless you have further questions. Are administrative appeals still pending? I was unclear on that as well. The Marine Corps has not finally resolved the appeals. And so. So all three clients have appeals pending as well? That's correct. The military is, you know, they're way past their deadline for issuing those. They have 60 days from the from the appeal which passed the beginning of this year. Thank you. More questions. Charles, do you have any more questions? Thank you. I don't. Morning. Good afternoon, Your Honor. Brian Springer on behalf of the federal government. I'd like to return to an important point from the discussion this morning. This case is in a highly preliminary posture and plaintiffs seek the extraordinary relief of an alteration to longstanding Marine Corps training policies. Plaintiffs have not demonstrated any urgency to justify such an immediate and exceptional alteration to an intrusion into military affairs. While plaintiffs have not carried the burden on any of. Under what test? I didn't see you. I was surprised not to see you arguing anywhere that a heightened test applies when the underlying merits and preliminary injunction lapse. Do you want to justify the ordinary preliminary injunction test? I think the plaintiffs fail under either test. We did cite the John Doe case, which does say that there's a heightened test when you're talking about a motion for injunction pending appeal as opposed to. No, that's that's different from the concern that Judge Brown. I have been raising in that his camp is only 13 weeks. And so a preliminary injunction resolves the only live claim. The three of these plaintiffs have right now on the merits. I mean, for all practical purposes, it resulted on the mayor. They get the full relief that they would get if they were to win on the merits in this litigation. But the government's position is that apparently that we just apply the same preliminary injunction standard that we normally would. All right. I do think that there would be a heightened standard in that situation. You haven't argued for it. So I don't know what is the best. All right. I don't think it matters which test this you may not think it matters. Let's assume I do. So but you haven't argued for a heightened test. But tell me what you think the test is in that situation. I do think that there is a heightened test when the plaintiffs are asked for effectively the ultimate relief that they're seeking. And what is that? Particularly when they're asking for something affirmative and a change of the status quo, which we did talk about in our briefing. And therefore, we would ask that the court apply a standard. So just apply the standard that applies to what you would call affirmative relief, but not anything higher because it actually is. For all practical purposes, resolving the merits. Your Honor, again, we haven't specifically spelled out this issue and I wouldn't want to take a firm position, but it is the case. And there are many cases that we cited in district court, for example, that say when you're asking for affirmative relief, like the relief plaintiffs are asking for here, that that requires a standard. I think that's the standard you want applied. Nothing higher than that. Your Honor, I think we would win under that standard and we don't need a higher standard. I know, but there's always a question. There is a risk that we think there's a difference that you might not win under one, but you might win under the other. Your Honor, we would ask the court to apply a higher standard, but we don't think that we need that in order to win in this particular circumstance. Again, I think the important reason for that is that plaintiffs here haven't identified any irreparable harm that they will suffer. What about the harm to, you know, the fact that their careers are on hold, you know, that they've lost opportunities to be serving in the military and therefore advance their military careers during the pendency of the lawsuit? I mean, that seems to be kind of the main harm that's been identified by appellants. Your Honor, I have two responses to that. One response is that the Supreme Court in Sampson v. Murray has said that these type of employment-based harms are not irreparable. But I would also just point to the fact that here, plaintiffs have not established a record. They have not put forward declarations that explain what opportunities their clients are missing out on, you know, in order for the court and the parties to be able to assess whether or not there is actually a particular irreparable harm here. I mean, what about the Roman Catholic Diocese case that was decided recently, right, where the Supreme Court says that the loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury? Your Honor, so that case is distinguishable from this one. And it's particularly distinguishable because in that case, that involved the closure of places of worship, which prevented people from actually exercising their religious beliefs. Here, the plaintiffs are free to continue to keep their unshorn hair, their uncut hair, and to wear their religious articles throughout the pendency of this lawsuit. The Marine Corps' policies don't apply to their conduct as civilians, and so there's no loss of First Amendment freedoms. So is the government making a kind of Justice Holmes type of argument? You know, the policeman has a right to talk politics, but he doesn't have a right to be a policeman? Your Honor, I don't know if I would call it exactly that, but I do think that the important point here is just that at this stage, plaintiffs aren't governed by these regulations, and they're free to wait until the merits are decided for this case. And there's nothing, there's no barrier to their entry should they eventually prevail. So you're saying there's no harm to their freedom to exercise their religious beliefs during the pendency of the lawsuit? That's correct, Your Honor, no irreparable harm. They're just forced to choose, they're put to a choice. I guess they could go to boot camp next month or whenever they could go, as long as they're willing to surrender their religious beliefs. And you think that means there's no harm to their religious beliefs? Your Honor, I don't think it's, there's a difference between harm and irreparable harm. I think here the plaintiffs have not shown irreparable harm because they haven't identified anything that they would lose in the interim should they wait until their challenge is fully adjudicated. And should they prevail, then they can go to, you know, go through the actual recruit training. But you can see that going through the basic training without the accommodation of the recruits religious beliefs is the irreparable harm? Your Honor, I think that they, that's not how they have talked about their harm. I mean, they've talked about their harm, you know, sort of writ large. And here, because they're not currently subject to any particular regulation, you know, their civilian conduct, they're free to continue exercising their religious beliefs. There's no irreparable harm at this point. Mr. Freer, going to the likelihood of success on the merits, why, I mean, what about the fact that here there is a patchwork of exemptions? I mean, they give a variety of different exemptions for medical beards or women's hairstyles. I mean, why doesn't that undermine both compelling interest of the government and any claim of narrow tailoring? Your Honor, I think that all of the so-called exceptions that are offered here are consistent with the government's, with, excuse me, the Marine Corps compelling interest. And they further that interest. Just to take one example, for example, the medical beards, the Marine Corps allows, you know, people who aren't allowed to shave. If that condition presents during the recruit training, they allow them a temporary waiver. However, that waiver doesn't allow them to stop shaving entirely. Instead, they are required to shave to the maximum extent possible. But that's just a matter of degree, right? I mean, their condition doesn't require, you know, the cessation of all sorts of hair removal, right? Because that's consistent with their medical condition. But here, the sincerely held religious beliefs of people who are Sikh is to not shave their beards or cut their hair at all. All right. I think that what we have to look at this in terms of is what the government's interest is here. And the government's interest is in creating this shared experience, this common endeavor that all of the recruits are going through. So when all of you say that those interests are so broad, I mean, you've got national defense idea of this group discipline and team oriented mindset. Why don't those interests exist all the way throughout their careers, essentially? Your Honor, as Colonel Jeffy explained in his declaration, these interests do exist outside of the recruit training process, but they're heightened during the recruit training process because that's the time during which these recruits are transformed from civilians into combat ready Marines. That's the point where these, you know, this psychological transformation. The case of all military in terms of the US, the Navy, the Army as well. Your Honor, again, Colonel Jeffy's declaration explains that and explains that the Marine Corps serves a unique interest in the national security defense because it is the country's chief expeditionary force and readiness. That makes no sense because nobody during boot camp is going out on an expedition as an expeditionary force. That all happens after boot camp, at which point their religious needs are going to be accommodated. So saying we are the expeditionary force after boot camp is no explanation as to why. They can't make accommodations during boot camp. The reason that it does. Correct. Right. They're not going off on expeditions, expeditionary, genuine expeditionary military deployments during 13 weeks of boot camp. Your Honor, they're not doing expeditionary service during boot camp. They need to have the foundation in order to do the expeditionary service when they. So the position of the Justice Department, which represents all of the military branches of the United States, is that the Marines have more of a need for that team mentality, that sacrificial mindset, that others and nation before self. The Marines have a higher need for that than the Army, Navy or Air Force. Is that your position? Your Honor, this is the Marine Corps. I understand, but the government is standing behind it. And if I want to, I want to understand whether the United States government agrees with the Marine Corps that their need is higher than the other branches, the other services of the military. Your Honor, I think we have to defer to what the Marine Corps has told us here. What they're saying is we have more of it. We know that the other branch services are making these accommodations. We can't. And the only thing I hear you saying they can't is that they have a need. An extra need to have all the things that every military branch has to have, and that is unity of purpose, commitment to others and nation over self. And I'm just a bit surprised. I guess I have to say honestly that the Justice Department believes that the Marine Corps is more committed to that than the Army or the Navy or the Air Force. Your Honor, here we have a declaration from Colonel Jeppe that explains why the Marine Corps training is different. It doesn't really explain it. He says because we're an expeditionary force, which isn't relevant at this stage. I don't I hear no other explanation other than because we're an expeditionary force, we have to have a that's what I'm asking. We have to have more of a self-sacrificing mindset than Navy SEALs. And doesn't that assume that these Marine would be on an expeditionary force right after their basic training? That's not the only job descriptions available, correct? Your Honor, that's not the only job description available. But again, as Colonel Jeppe explains, the entire Marine Corps has to every single Marine has to be ready to serve in this expeditionary role at a moment's notice to be sent out across the world to address military exigencies. Other branches of the military, as Colonel Jeppe explains, have smaller subsets that do that. But their entire force is not prepared to do that at a moment's notice in the same way that the Marines is. Mr. Schreiber, I mean, let's talk a little bit more about these exemptions. I mean, what about the exemptions for female Marines? So it seems like there are no you know that they can keep any hairstyle whatsoever. Right. So the Marines is already making a very substantial exemption based on gender or sex or, you know, for women. I mean, I'm not sure if that's, you know, an exemption that's made. Why there wouldn't be an exemption made for religious beliefs and religious practices. I mean, how do you distinguish that? I mean, you know, you have some distinction on the medical beards. I'm not sure I fully follow that. But but, you know, for for women recruits, they can keep any hairstyle at all. So, again, I think the important thing is to return to what the interest is here and hear what the Marine Corps explains. It's an interest in having everybody go through the same set of regimented practices. And women do that as well as men and women, although they have slightly different standards. They are also required to follow very strict grooming requirements. Just just to take one example, if a woman decides to put her hair up in braids, the braids have to be no more than three seven inch in diameter. And they have to be spaced no more than three eighths of an inch apart. So they are also going into the bathroom every morning together and having the same experience of having to comply with these very strict grooming requirements. They don't make the women cut their hair short or shave their heads. They don't make the women cut their hair short, but they are still subject to extremely strict grooming requirements. But you also allow tattoos. And do you distinguish between types of tattoos? Your Honor, so there are limitations on the tattoos. There's specific content that's not allowed in general. They're not allowed on the hands, face or the neck. And I think tattoos are just a different story because, again, what the interest is here is it's the interest of going through the same regimented practice. This is you show up every day and you do the same thing with the same people or, you know, 13 weeks. And the fact that somebody has a tattoo is not undermining that interest. It's not serving the same thing as making everybody go through the same experience. It sounds like the experience, though, is like being groomed neatly and in a certain way. And so presumably that requirement would apply to somebody who doesn't cut their hair and puts their hair in a turban or ties up their beard. I'm not sure why that couldn't be part of the commitment to looking, you know, clean and neat and ready for, you know, for basic training. I mean, it seems that that's sort of the accommodation that's been made, you know, based on based on sex, based on, you know, other practices. And again, I think it's that it goes beyond just the idea of looking clean and neat. It's also the idea of everybody is being subject to the same thing. Everyone is going into the bathroom at the same time and shaving their face. And it's that shared experience. It's that. But not everyone is. Not everyone's going in to shave in the morning. We know that. I'm not sure because of the exception for people who can't shave. So they're not going in to shave. Your Honor, as I mentioned, even people who present with this medical condition are required to shave to the maximum. So I go, but they can't shave. No, they may have to use it as close as they can. But they're not gone. They're not doing the same thing. They're doing something different. So you could have the group shaving the group that's clipping and the group that is tying the beard close to the face. Your Honor, they are doing basically the same thing. They're going into the bathroom and using clippers instead of a razor. I mean, is this really the distinction on which, you know, the cohesion and uniformity of the Marines depends? Like whether someone is clipping or tying something close to their face or shaving? I mean, you're sort of, I guess, finally splitting hairs here in a way. Your Honor, again, I would turn back to Colonel Jeffy's declaration and particularly paragraph 17 to 20, where he explains that this is an integral and vital part of making sure that recruits go through this necessary psychological transformation to turn them into combat ready Marines. So you have the view that if someone, if you have the group that's shaving the group that's clipping as close as they can, but I don't know how close that is, and group that's tying up the beard as tightly as they can, that that would not work. The transformation would fail as to that third group. Your Honor, again, I would point you to these same paragraphs of Colonel Jeffy's declaration. I don't know, he talked about why we do it, but he didn't say that this transformation, which is mainly what happens after you're out of the bathroom for the rest of the day, that if we do it that way. When we allowed clipping, I'm sure before that we said no, we have to have clean shaven, but then we made an exception for people who can't shave. We said we'll allow clipping, and the Marines seemed to be functioning just fine. What I didn't hear was how do we know that allowing people to tie a beard as close as possible to their face, their body, or tie it up as tightly as possible, won't have the same effect as allowing clipping rather than shaving. It wasn't there in the declaration. There wasn't anything specific about how if we do this accommodation, it will no longer work. Your Honor, I think that Colonel Jeffy does address this general idea, and that, of course, as we've talked about, there may need to be more that gets put into the record at a later point, which is why, again, it's important to emphasize that we're still at this extremely early stage, and that because plaintiffs haven't shown reparable harm or that the district court have used its discretion. Well, but, I mean, going to likelihood of the merits, I mean, under RFRA, it's the government's burden to show that their policy is the least restrictive means. Isn't that right? Yes, Your Honor. So that, you know, if we think that the government hasn't demonstrated that, then that would weigh in favor of plaintiffs showing that they have a likelihood of success. Your Honor, but even if it were a close question on the merits, it still wouldn't be the case. That wouldn't dictate that plaintiffs are entitled to the equitable interim relief that they're seeking here. Again, they haven't shown irreparable harm or shown that the district court have used its discretion on balancing the equities and the public interest. And speaking of these equities and public interest, you use this particular affidavit, but in the Winner case and then in other Supreme Court, and I believe there was a Ninth Circuit case as well, they use more senior officials to kind of make this statement about the interests. So do you have any response to that about being able to rely on here, your affidavit, with respect to Jeppe, as opposed to what was in those cases, with more senior officials making a statement on behalf of the military? Your Honor, I don't think that the Winner case requires any particular seniority level. And here, Colonel Jeppe is the one who has this information and knows this information. He sort of runs this program to some degree. And here he has given us a full explanation as to why these interests are implicated and would be undermined by the type of relief that plaintiffs are seeking here. Are folks required to shave before going to officer candidate school or accommodations made for officer candidate school? Your Honor, I don't know the answer to that question. I believe that between, for example, the Naval Academy or officer candidate school and coming into the Marines, there's an additional training that happens. I don't know. I'm not talking about someone coming out of the Academy. I'm talking about someone who goes out of college into officer candidate school for the Marines. Your Honor, I don't know the answer to that question. Mr. Springer, the appellant suggests that we have enough before us now to decide not just the injunction pending appeal but also the preliminary injunction motion. Does the government agree with that, that we have enough in the briefings before us to decide that? The preliminary injunction question? Your Honor, I think that the government would like the opportunity to submit additional briefing and elaborate on some of the arguments that have been made here in order to, you know, have a final decision on the preliminary injunction appeal. And what is – I had asked a question about mootness, right? I mean, if we were to grant an injunction pending appeal or even down the road maybe a preliminary injunction, would that move the case in the government's view? Your Honor, I think it conceivably could move the case if these plaintiffs were to ship out to boot camp and start boot camp. And why is that? Because I think once, you know, once they've shipped out, that has already created the harm that the government is seeking to avoid here. And that probably by the time any of the case got resolved, particularly the case in district court, the plaintiffs would have completed the 13-week boot camp. Would the government have an interest in maintaining the lawsuit to get a definitive answer for future recruits? I mean, do you think it would fall under the exception to mootness for capable of repetition yet evading review? Your Honor, we haven't thought through that question, and it may also implicate whether, you know, the solicitor general's views about what the government's position should be here. So I don't want to take a firm position on what our view would be if that were to happen. To Judge Millett's point, do you think any claim about whether exemptions are granted, you know, for forward-deployed troops or on expeditions, do you think those claims would still be right if the other claims were dismissed as moot? So, Your Honor, I suppose we would need to look at the facts of where the plaintiffs are in the process. I do think we would need to analyze whether or not, you know, they are likely to be deployed in, for example, a combat zone in order to determine whether or not their challenge is right. And that's not something that at this stage we are looking at. The preliminary injunction is only with respect to recruit training. How long would normally elapse between if a preliminary injunction were issued and then them getting to go to boot camp? How long would elapse? Your Honor, my understanding is that they ship to boot camp every two weeks or so or every month. I don't have information about whether the next set of, you know, whether there are slots in sort of the next set of— I'm trying to figure out the timing here because you say you want to do a full appeal, even if to separate the preliminary injunction appeal from this injunction pending appeal motion. But I'm not sure if it could get—your merits appeal would have to go extremely fast to get it resolved before they— would have to go super fast to get it resolved before—to get even the appeal resolved before it became moot. Unless it takes two months or so to go to get deployed because they're only talking 13 weeks. Your Honor, I mean, I think the important point here is just about, you know, the timing that plaintiffs have pursued here. They haven't shown the urgency and there's no out—you know, The assumption is if—it's a very big if—but if we were to grant an injunction pending appeal, probably within the next 30 days they would start. Two weeks to 30 days they would start boot camp. Well, I don't want to commit to a specific timing, Your Honor, because, again, I don't know the specifics about how many slots are filled or anything like that. But I—obviously, to the extent that that injunction stayed in place— Is that information you could provide us so we have a sense of the timeframe? Is that something you could provide—your client should be able to tell us how that works. Your Honor, I can ask my client if that's something that they're able to share with the court. It would be helpful to have some sense of the time. Because if they're super busy, so it's going to take three months before they could even start anyhow, that's a completely different timeframe than if, you know, an injunction were to issue, they would be there November 1. It's just very, very different timeframes. And I'm really struggling with, you know, whether an appeal can go forward and even be resolved for the entire thing we've mooted out. If it can't, then how does that factor into the decision to grant or not an injunction pending appeal? Again, Your Honor, I guess I would return to the fact that the plaintiffs here haven't identified any deadline. And just to update the court as well, just to make sure that this is in the record, the Marine Corps has gone forward. It has extended the DEP contract to April 2023. It has also extended the test scores to September 2023. So those deadlines that, you know, were imminent have been extended out to Esponte by the Marine Corps to ensure that they don't elapse. Is the Marine Corps committing to do that for the rest of this litigation, or are we driven by that deadline, those new deadlines? Your Honor, I know that the test scores can be extended further. I believe that the DEP contract, there may be a statutory limit to how long it can be extended. What is DEP? Yeah, the Delayed Entry Program. So what would the statutory limit arguably be? Your Honor, I'm not sure that I have that answer at my fingertips. I believe that we may be getting close to the outer limit of how long it can be extended. Well, that would be a good thing for this court to know, too, if you can get back to us on that. And are there any particular measures that the government has to do with respect to the military to actually accommodate these requests? Any kind of preparation that you all have to do that might factor into deadlines as well? So I don't know the specifics, Your Honor, but there would be internal coordination that would need to happen in order to make sure that, you know, these accommodations could be accommodated. Do you know if yarmulkes are allowed to be worn during boot camp? Your Honor, they are not. And no one's challenged that? No, Your Honor. But the other branches allow it or don't allow it? You don't know? I don't know the answer, Your Honor. Okay. All right. My colleagues, do you have any further questions? All right. Thank you very much. Appreciate it. Mr. Baxter, we'll give you three minutes. Your Honor, just quickly to hit some points. The government is here on strict scrutiny. The burden is the government's to provide evidence to support its claims. The government has had many years to do this. It has had that same burden when it denied our clients their accommodation. Its own regulations require that in reviewing the accommodations, it must meet the strict scrutiny standards. They've had two years to do that, and they haven't provided any evidence to show why our clients should not be allowed to serve immediately. I would point this court to Gordon v. Holder at 632 F3rd 722, where this court held that timing alone is not a reason to deny a preliminary injunction. And that's particularly important here where the irreparable harm is irreparable as a matter of law. Both this court and the Supreme Court have repeatedly held that when there is irreparable harm. The court in Trinity Lutheran said, for example, of our case about access to shredded tire material for platelets, that it was long past the day when the government can argue that denying access to benefits and the ability to serve does not violate religious rights. And so we would ask the court to accept the irreparable harm as a matter of law, in addition for the reasons that our clients have been delayed in their ability to progress in the military. As to the merits, the government now argues that it's all about a shared experience. Our clients also every day have the discipline of tying their turbans, tying their beards tightly to their face, even perhaps a more difficult challenge than just shaving. And they have been doing that in a disciplined way every day of their lives. And they are now, they would share that experience just the same way that women recruits share with their unique grooming standards, or that individuals should use medical accommodations. They have been practicing a sacrificial mindset. This court, sorry, the district court in this case and another scene versus McHugh already addressed where Sikhs served in the military and showed that they contributed to the esprit de corps, to the uniform, and to the leadership. I think Judge Childs mentioned the Winter case. I would just point this case to Ramirez. Congress specifically discussed prison and military deference, in the same context and said that deference has to be decided under the strict scrutiny standard. Ramirez is an excellent example of where the government actually provided detailed reasons why it could not allow vocalized prayers or touching in the death chamber. And the court still subjected the government to strict scrutiny, required the government to meet its evidence and held in that case, the court hadn't met its evidence because there were at least less  There are many ways the government can enforce a uniformity or a shared experience without requiring our clients to violate their religious beliefs. And Marine Corps mentioned that they would like more time to develop the Jep and Nguyen for more discovery, but in their initial disclosures, they've only identified Jep and Nguyen as witnesses. There's no additional evidence after two years of the Marine Corps. Is the government seeking discovery as well? They said that they are seeking some minimal discovery. What are they seeking? Sorry? What have they asked us? So far they have not issued a discovery request. They have a deadline to issue this? They do. And it's coming up this month. I don't want to make calls off my head on the deadline. As to rightness, I would just mention that the decision has been made once the decision has been made, our clients are not required to wait until the day of their denial to be able to challenge that. And you mentioned also how soon could they start, but that delay is the same delay that would continue if we wait for the district court to decide sometime in the spring or early summer, whatever delay is inherent in the process would still be in existence at that time, further causing delay to our clients. This is the same branch of the military that so long resisted integration on a number of other bases, claiming uniformity tradition. The tradition should not be confused with the national security interest. Our clients have the right to serve their country and should not be further withheld from exercising that right because of their religious beliefs and practices. And for these reasons, your honor, we would ask the court to enter a preliminary injunction immediately protecting our client's rights. Thank you. Thank you.
judges: Millett, Rao, Childs